TOWNSHIP OF JACKSON v. ELLEN T. WAGNER.

ERROR TO THE COURT OF COMMON PLEAS OF LEBANON COUNTY.

Argued February 22, 1889—Decided June 4, 1889.
[To be reported.]

1. Township officers are bound to anticipate and provide for the ordinary needs of travel conducted in the ordinary manner. and to remove obstructions and defects which would naturally or probably cause injury to the traveler along the highway.

2. But where the highway is an ordinary country road through an open cultivated region, with no unusual dangers or exposures, such officers are not bound to anticipate the dangers to which a broken wagon or a frightened horse may expose the driver.

3. Where the plaintiff's horse, driven upon a highway, was frightened at an object for the presence of which in the highway the township was not responsible, and, turning suddenly, broke off a wheel, and dragged and overturned the carriage upon a stone heap at the roadside at a point where the roadway was not unsafe for ordinary travel, the township is not liable for the resulting injuries.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MC-COLLUM, JJ.

No. 271 January Term 1889, Sup. Ct.; court below, No. 164 September Term 1887, C. P.

On September 8, 1887, Ellen T. Wagner brought statutory trespass against the township of Jackson, to recover damages for injuries to her person received when driving upon a public highway. Issue.

At the trial on November 12, 1888, the testimony showed, in substance, that on July 9, 1887, the plaintiff, with her sister and three children, were driving in a horse and buggy along a public highway called Mill street, laid out of the approved width of thirty-three feet. When near the village of Myerstown, the road going through an open and cultivated region, with no dangerous exposures, they passed a point where there had been a quarry opened at the side of the road. Stones had also been taken from the road-bed and piled alongside the traveled way for about twenty-five feet in length and at places several feet high, leaving, however, an unobstructed roadway of about fifteen feet in width to the water-way on the other side, though near the stone pile there was a hole or depression in the roadway caused perhaps by a washout.

After the plaintiff had passed some distance beyond the stone pile, the horse, becoming frightened by the sight of a couple of donkeys, one of which was in a cart and the other running loose, stopped short, turned round suddenly, broke down the left front wheel of the wagon and started back, drawing the wagon on three wheels and the hub of the broken wheel. When the stone pile was reached, the hub of the broken wheel struck it, as a hind wheel dropped into the depression in the road-bed, when the wagon was overturned, the plaintiff thrown out and seriously, and, as was claimed, permanently injured. The plaintiff testified that she had nearly stopped the horse, and

that she believed that if it had not been for this hole, she would have stopped him in a moment.

The contentions of the parties sufficiently appear in portions of the charge to the jury, McPHERSON, J.:

Just what the precise situation then was, there is some dispute about, and the jury must determine it from the evidence. One side testifies that the horse was under perfect, or substantially perfect, control; that it could easily have been guided and restrained; that the wheel being off on the left, or north side, would act as a brake, and make it more easy to control the horse; and that therefore, from that and the other circumstances in the case bearing upon the condition of things at that time, the plaintiff was negligent, either in not stopping the horse before they came to this pile of stones and the washout in the road, or, having come to or near that point, in not turning the horse away so as to avoid either or both of these obstructions in the road.

Now, that is of course a very important question. It is submitted to the jury for their determination as one of the important questions in the case. That is, entirely aside of the negligence of the township, was the plaintiff upon her part guilty of negligence which helped to bring about this accident—negligence which contributed to this accident? Was she careless herself? . . . . .

So, taking all the facts into consideration; the facts that these women, with the children, were doubtless in a position of danger, and that there was a great deal in their situation to alarm them, and alarm them seriously—taking all these matters into account, the jury must decide, as I say, whether the plaintiff was guilty of doing anything, or omitting to do anything, which contributed to her accident or injury. If she was, she cannot recover.

If, however, you find that she did everything which in the circumstances ordinarily prudent persons would have done, then you come to the question whether the township has been negligent; that is, whether the supervisors have been negligent; because the case rests upon their doing or not doing, as the case may be. The supervisors are the officers in charge of the roads, and the township is responsible for their negligence with reference to the roads.

Charge of Court below.

A country road differs in some respects from a road that runs through a town. It is not necessary that a country road should be kept in a condition to be traveled from one side to the other. That would cause to townships an expense which in many cases, in most cases, indeed, they are not able to bear. There is no such requirement in our statutes, and no such rule of law. It is enough if a township keeps a sufficient portion of the road, the centre of the road, in good order, so that it can be traveled upon, and free from obstructions. Just how wide that portion ought to be is of course something that I cannot lay down to you, and it has never been laid down. It is not said, for instance, that there should be at least fifteen feet in the middle of the road, or that there should be at least twenty feet, or that ten feet is sufficient. The rule is that there must be a sufficient portion for ordinarily safe and convenient travel, upon the particular road and at the particular place. For instance, to illustrate that, a road that is unfrequently traveled—suppose one or two times a day—would properly get along with less care and with less of the road in order for travel, than a road over which vehicles were constantly passing. You can see that of course for yourselves without any further discussion of the matter. . . .

It is said here that that was not the case; that a portion of the road was obstructed by a pile of stones, and also by a washout, or hole, as it has been called; and those are the important matters in the case bearing upon the question of the negligence of the supervisors. I withdraw from the consideration of the jury entirely any question with reference to the stone quarry, and the degree to which it may or may not have encroached upon the road. In my judgment, that has nothing to do with the case. I do not see that it has been shown to have contributed to the accident in any way; and therefore, as I say, I instruct you to entirely disregard any testimony in the case with reference to this quarry being within the limits of the road. Just leave the quarry out of view entirely, and confine your attention to the pile of stones and the washout.

There is varying testimony with regard to this particular obstruction; as to the size of the pile of stones, and as to the depth, length and breadth of the hole. The jury must in the first instance find from the testimony, as best they can, taking the weight of it, what these obstructions really were; how

high, how broad and how long was the pile of stones? So, with regard to the washout; how deep was it, and what was its position in the road? I understand it to be substantially agreed that it was in the traveled portion of the road, but the jury must determine. As I understand, the pile of stones was right along the side of the traveled track; and, quite near the foot of the pile, in the track of the road, was the washout; then came the track of the road a distance as to which the witnesses are not entirely agreed; then came the gutter, then the sidewalk, and finally the south line of the road.

Having determined the position and size of these obstructions, the jury must then decide whether they did unreasonably obstruct the road. Did they leave the rest of the road sufficient for the safe and convenient use of the public? If they find that they did not, then there would still be another question in the case; and that is the knowledge of the supervisors of their existence, and their failure to remove the stones or to fill up the hole. Because, although it might be that obstructions in the road made the road unsafe and inconvenient for travel, it would not follow that the township was responsible. It would still be necessary to show that the proper officers were in fault in neglecting to put things in their proper order. . . . . .

I will briefly go over the steps at this point. You must find in the first place that the plaintiff was not guilty of contributory negligence. Then you must find that this road was unreasonably obstructed. Then you must find that the unreasonable obstruction of the road was due to the neglect of the supervisors. If you find any of those facts against the plaintiff, she has no case. If you find them all in her favor, then you come to a further point as to which there is little or no question: What directly caused her injury? You must find that her injury was caused by one of these obstructions.

Both sides agree that the overturning of the buggy, which was the immediate physical cause of her injuries—that, in connection with the stones, or wherever she fell; the jury will determine where it was—that the overturning of the buggy was caused either by the hole or by the stones; so that the jury, I take it, will have no difficulty in finding that her injuries were the result of contact with the stones or with the hole.

Charge of Court below.

If they decide that to be so, having found all the other matters to which I have alluded against the township, then they would come to the question of damages. . . . . .

Those are some points to be answered. The plaintiff's points are as follows [inter alia] :

1. The township authorities are bound to keep the road in good condition, free from obstruction, so free that even a skittish horse may be employed without danger.

Answer : This is affirmed, although in a country road the whole width need not be kept in such condition.

2. If the injury of the plaintiff was caused by the township authorities not maintaining the road of sufficient breadth, or by improperly allowing excavations in the road, or by permitting dangerous holes to remain in the road, or by all or several of those causes combined, without proof of concurrent negligence on the part of the plaintiff, the plaintiff is entitled to recover.

Answer : The question of improper excavation in the road is not in the case, and that clause is stricken from the point. Thus modified, it is affirmed.[1]

3. If the plaintiff was in the exercise of ordinary care and prudence, and the injury was caused by the insufficiency of the road, combined with some accidental cause, the defendant is liable, and the plaintiff is entitled to recover.

Answer : This is affirmed, if the insufficiency of the road arises from the defendant's negligence.[2]

4. If the jury believe that the injury to plaintiff resulted from the hub of the wheel striking the pile of stones, or running into a hole or excavation in the road, as described by the plaintiff, concurrently with the accidental fright of the horse and the breaking of the wheel of the buggy, the plaintiff is entitled to recover, unless the defendant can show contributory negligence on the part of the plaintiff.

Answer : The facts suggested are left to the jury ; the question of negligence is for them. But I may say here, in partial answer to that point, what I omitted to say in the charge, that although no doubt the accident of the horse taking fright was one of the causes, that in my judgment would not relieve the defendant from liability in case the township officers, the supervisors, had been guilty of neglect which helped to bring the

injury about. Of course, if the horse had not run away, no accident would have happened. If the jury find from the evidence, that if it had not been for the neglect of the supervisors also, the accident would not have happened, then the township would be responsible, although the accident of the runaway may have been a partial cause. If there were then two causes contributing to the accident and the injury, namely, the accident of the runaway, for which nobody was to blame, and the carelessness of the supervisors, then the township would be responsible for the carelessness of the supervisors, although it was only one of the causes tending to bring about the injury.

The defendant's points are these [inter alia] :

1. That if the jury believe that the horse driven by the plaintiff frightened at a donkey on the public highway, after having passed the stone heap on the public road, and turned round and broke the wheel of the buggy in which she was riding, and the horse then ran away and, with the buggy thus injured, with the loss of a front wheel, was run against the stone heap and caused injuries, the township is not liable, and the plaintiff cannot recover.

Answer : This is refused. The jury must decide whether the supervisors were negligent in their care of this road, and, if so, whether their negligence was one cause of the injury. If it was one direct cause of the injury, the township would be liable, if the plaintiff herself was not guilty of contributory negligence.[3]

2. That if the jury believe that a sufficient portion of the road (being a country road) at the place where the plaintiff was thrown out of the buggy was kept in good condition for travel, the plaintiff cannot recover.

Answer : As a general proposition, a country road need not be kept in condition for travel from side to side. A sufficient portion of the middle only need be kept in smooth condition and safe and convenient for travel. The jury must decide whether at this point the road was negligently obstructed. If it was not, the plaintiff cannot recover.

3. If the jury believe that the horse was frightened by the donkey and in turning round broke the wheel of the buggy, and on account of this broken wheel that side of the front part of the buggy axle was on the ground and prevented the

Arguments.

driver from guiding the horse to the right in order to avoid the stone heap, or if they believe that the driver had lost control of the horse, then the plaintiff cannot recover.

Answer: This is refused.[4]

5. If the jury believe that the horse driven by the plaintiff frightened at something on the road not a defect in the highway, and which the supervisors were not bound by law to remove, and the injury resulted from the horse running away through such fright, the plaintiff cannot recover.

Answer: If this means that the injury resulted *solely* from the horse running away, it is affirmed; but if it means that there could be no recovery, even if the injury was caused *in part* by the negligence of the supervisors, it is refused.[5]

6. That under all the evidence in the case the plaintiff is not entitled to recover.

Answer: This is refused.[6]

The jury returned a verdict in favor of the plaintiff for $3,000. Judgment having been entered, the defendant took this writ, assigning for error:

1, 2. The answers to the plaintiff's points.[1] [2]

3–6. The answers to the defendant's points.[3 to 6]

*Mr. W. M. Derr*, for the plaintiff in error:

1. The testimony of the plaintiff below clearly shows that at the time when the vehicle came in contact with the stone pile, there were but three wheels on the buggy, the fourth wheel had been broken, the hub thereof had been dragged along the road and the horse was unmanageable. The township is not bound to keep the roads in such condition as will prevent accidents to persons driving, either voluntarily or involuntarily, in unroadworthy vehicles and with unmanageable horses: Gregory v. Adams, 14 Gray 247; McCormick v. Washington Tp., 112 Pa. 185, 197.

2. As the condition of the vehicle and the unmanageable conduct of the horse were in no wise imputable to the township, these circumstances, taken either by themselves or in conjunction with the existence of the stone pile, imposed no obligation upon the township to pay for the plaintiff's injuries: Wharton on Neg., 2d ed., §§ 85, 103, 104; Pittsburgh v. Grier,

22 Pa. 54; Hey v. Philadelphia, 81 Pa. 44; Burrell Tp. v. Uncapher, 117 Pa. 353; Davis v. Dudley, 4 Allen 557; Murdock v. Warwick, 4 Gray 178; Lower Macungie Tp. v. Merkhoffer, 71 Pa. 276; Kelly v. Fond du Lac, 31 Wis. 180; Titus v. Northbridge, 97 Mass. 258; Horton v. Taunton, 97 Mass. 266.

3. Assuming that it was a fault of the township authorities to permit the pile of stones to lie along the side of the road, yet the injury to the plaintiff, as it appears from her own testimony, was not a natural, probable and usual consequence of such fault, but was a result which could not have been foreseen by ordinary forecast, and therefore the plaintiff should not have been permitted to recover: Monongahela City v. Fischer, 111 Pa. 9, 13; McGrew v. Stone, 53 Pa. 436; Hoag v. Railroad Co., 85 Pa. 293; West Mahanoy Tp. v. Watson, 116 Pa. 344.

4. Where it is alleged that an injury arose from negligence, the question of the proximate cause is to be decided by the jury upon all the facts of the case; but where the facts are undisputed, and the intervening agency is manifest, it is not error for the court to withhold the evidence from the jury. The intervening agency, to wit: the broken down buggy and the unmanageable horse, being manifest, the court should have withheld the evidence from the jury and instructed them to find for the defendant: Hoag v. Railroad Co., 85 Pa. 293; West Mahanoy Tp. v. Watson, 116 Pa. 344; Del. etc. R. Co. v. Cadow, 120 Pa. 559.

*Mr. Grant Weidman* (with him *Mr. P. S. Keyser*), for the defendant in error:

1. This case, as we understand it, is ruled by the case of Burrell Tp. v. Uncapher, 117 Pa. 353, which decides: "If, in consequence of the negligence of a township to keep and maintain a public highway in a reasonably safe condition, an injury has been sustained by the plaintiff, it is no defence that the injury was caused by the combined effect of the negligence of the township and a negligent act of a third person." The same principle is decided in the cases of Lower Macungie Tp. v. Merkhoffer, 71 Pa. 276; Hey v. Philadelphia, 81 Pa. 44; Norristown v. Moyer, 67 Pa. 355; Erie City v. Schwingle, 22 Pa. 385. The jury, therefore, having found that the plaintiff

was not guilty of contributory negligence; that the road was not reasonably safe for travel, but was unreasonably and unlawfully obstructed; that these obstructions were due to the negligence of the supervisors; and that the injury was caused by these obstructions, under the authority of the cases cited, the verdict was in accordance with the law and must be sustained.

2. "As a result of the cases, we may hold that where there is a hole or other defect in the road, against which a runaway carriage is wrecked, it is no defence that the horses were frightened and beyond control, if the obstruction is one which would impose liability had the horses not run away:" Wharton on Neg., 2d ed., § 984. "A town cannot relieve itself from liability for damages to a carriage from striking a defect which was negligently permitted, by showing that the carriage was itself defective, provided the defect was not known to the plaintiff or caused by his negligence:" Wharton on Neg., 2d ed., § 99. And see Beach on Cont. Neg. § 76; Hunt v. Pownall, 9 Vt. 411. The whole argument of the defendant is based upon two assumed facts, to wit: that the cause of the accident was the breaking of the wheel or the unmanageable condition of the horse, or both combined. The evidence clearly shows, and the verdict of the jury establishes, that neither the one nor the other, nor both together, caused the accident, but that it was caused by the hole and stone pile negligently left in the roadway by the supervisors.

3. It will become manifest from a perusal of the testimony that there was very little agreement as to how this accident occurred. The sufficiency and safety of the roadway; the size and location of the hole; the acts of the plaintiff; whether the horse was road-worthy or not; notice to the supervisors of the defects of the road; all these matters were subjects of dispute and argument before the jury. While we admit that in some cases it is the duty of the court to give binding instructions, yet in this case the rule is not applicable: McCully v. Clarke, 40 Pa. 406; Penn. Canal Co. v. Bently, 66 Pa. 34.

OPINION, MR. JUSTICE WILLIAMS:

This case presents an unusual question, one that is not clearly settled, and one of much more than ordinary impor-

tance.   The facts upon which it is raised are not involved in any serious controversy.   The plaintiff was driving a horse and wagon along a public highway in Jackson township, Lebanon county.   Her sister and three children were in the wagon with her.   At one point there was at the side of the road an irregular pile of stones some twenty-five feet long and from one to two feet high, which had been taken out of the road in the immediate vicinity by the supervisors and left there until a convenient time for their removal.   Between the stone pile and the gutter opposite, was an unobstructed roadway fifteen feet wide.   The plaintiff drove over this part of the road without noticing that there was a stone pile near the road or any defect in the roadway.   When about one hundred and twenty feet beyond the stone pile, her horse took fright at two donkeys approaching in the road, stopped, turned suddenly around, broke down the left forward wheel and let the axle fall to the ground.   It then started rapidly back drawing the buggy on three wheels and the dragging axle.   The axle acted like a rudder in drawing the horse and wagon to the north side of the road until when the stone heap was reached the axle struck it, the wagon was overturned, and the plaintiff injured.   She testifies that at the same time the hind wheel dropped into a depression in the road which aided in overturning the wagon. A recovery was sought and had in the court below on the theory that it was negligence in the supervisors to leave the stone pile where it was, and to suffer the depression in the roadway to remain for several days unfilled.

The defence alleged that the road was in good condition, safe for all the ordinary purposes of travel, and that plaintiff's injury was chargeable to the fright of her horse, the breaking of her wagon, and her consequent inability to guide or control the horse and keep it within the limits of the traveled roadway.   These, it was urged, were circumstances that the township was not bound to anticipate or provide against, and the injury received by means of them was one which was in no sense the natural or probable cause of the acts complained of. This line of defence was presented to the court in the defendant's points, the third of which asked the following instruction :

"If the jury believe that the horse was frightened by the donkey, and in turning round broke the wheel of the buggy,

Opinion of the Court.

and on account of this broken wheel that side of the front part of the buggy axle was on the ground and prevented the driver from guiding the horse to the right in order to avoid the stone heap, or if they believe that the driver had lost control of the horse, then the plaintiff cannot recover."

In other words, this was a request for an instruction that if the injury received was due to the fright of the horse, the broken wheel, and the dragging axle, and not to a defect in the highway, the township was not liable. This should have been affirmed with some qualification as to the effect of mere loss of control by the driver; for, if the several facts assumed by the point had been found by the jury, the plaintiff was not entitled to a verdict.

Township officers are bound to anticipate and provide against the ordinary needs of travel conducted in the ordinary manner, and to remove obstructions and defects which would naturally or probably cause injury to the traveler along the highways; but the township is not an insurer against all possible accidents, nor is it bound to anticipate the danger to which a broken wagon or a frightened horse may expose the driver. Such a burden would be too heavy for any township to bear, and the law does not impose it. The general rule is well stated in Hey v. Philadelphia, 81 Pa. 44, to be that "roads and bridges are made for ordinary travel; if they fulfil such purpose they are sufficient, and those in charge of them are not responsible for extraordinary accidents occurring on them." Negligence is the absence of that measure of care which the circumstances require. The duty of road officers is to provide for the ordinary needs of travel, but this changes with a change of circumstances. Proximity to a precipice or a railroad track is a visible danger, and requires a degree of care in guarding against it not necessary under ordinary circumstances, yet it is only that care which common prudence would dictate in view of an unusual danger as necessary to safety in the ordinary use of the highway at that point: Lower Macungie Tp. v. Merkhoffer, 71 Pa. 276; Hey v. Philadelphia, supra; Newlin Tp. v. Davis, 77 Pa. 317.

The application of this rule to the case in hand is by no means difficult. The road in question is an ordinary country road passing through an open cultivated region, with no un-

usual dangers or exposures. It was fifteen feet wide at the place where the accident occurred. The testimony tended to show that it was in ordinary repair and safe for the purposes of ordinary travel. It is true, there would have been from four to six feet more space over which a horse and wagon could pass if the stone pile had not been there, and it may be conjectured that such additional space would have enabled the plaintiff to pass this particular spot safely, but this alone is not enough to settle the defendant's liability. The question is whether this road was obstructed so as to interfere with its ordinary use, and whether such obstruction caused the injuries. The horse had passed this part of the road without the slightest inconvenience. There was no railroad crossing, no precipice, or other exposure, but the fright of the horse was at an object for whose presence in the highway the township was not responsible. The wheel was crushed by the sharp turn of the wagon, not by any defect in the highway. The dragging axle drew horse and wagon to one side of the road, so that the axle struck the stone pile and the wagon was overturned and the plaintiff hurt. Now the question is, not whether a broader road would have enabled the plaintiff to pass along safely with her frightened horse and disabled wagon, but whether the road was broad enough and good enough for the purposes of a highway in that place. Was it safe for the purposes for which it was made, and did it accommodate the traveling public using it in the ordinary manner, with reasonable facilities for travel?

That an accident did happen is clear, but that fact alone does not settle our question. It is necessary to inquire further whether the accident was the natural or probable result of any act or omission of the township officers which rendered the highway unsafe for the purposes of travel, conducted in the ordinary manner and by the ordinary means of conveyance. If it was, then the plaintiff ought to recover, and the fright of her horse, the breaking of her wagon, and her inability to guide her frightened animal, should not stand in the way of her recovery. These circumstances do not confer on her any rights she would not have possessed without them, nor give her any higher claim on the care of the township officers. On the other hand, they do not take from her any right to which she in common with other travelers was entitled in the use of

the highway. It is the condition of the highway therefore, and not the succession of accidents that befell the plaintiff, to which the attention of the jury should have been held. Was the road on that day and at that place in a condition that made it a suitable and sufficient road for public travel conducted in the ordinary manner? If the jury had found, as the third point assumed, that the plaintiff's injury was not due to an unsafe condition of the road, but to the successive accidents which befell her, and which had no connection whatever with the road or with the doings or misdoings of the supervisors, then it is very clear that the township was not liable to pay her. If the jury had found against the township on the facts assumed, and that her injury was due to the existence of defects in the road which the exercise of common prudence would have required the removal of, for the safety of travelers using the public road in the ordinary way, then she would have been entitled to a verdict.

> Judgment reversed, and venire facias de novo awarded.