## Morford *v.* Sharpsville Borough, Appellant.

*Negligence—Borough—Defective road—Guard rail—Proximate and remote cause.*

In an action against a borough to recover damages for injuries to a child two years old, by falling with a horse and buggy over an embankment of a road at a point where there was no guard rail, the child is not entitled to recover if the jury find from sufficient evidence, that prior to the accident the mother of the child descended from the buggy and attempted to drive the horse to the edge of the embankment, so as to hitch him to a telephone pole which was a few feet below the edge, that the earth gave way under the horse's weight, and the horse, buggy and child rolled down the embankment and the child was injured. In such a case the absence of a guard rail was not the proximate and efficient cause of the accident. The borough authorities were not bound to anticipate and guard against the consequences of the unusual conduct of the mother.

Argued May 11, 1905.    Appeal, No. 248, April T., 1905, by defendant, from judgment of C. P. Mercer Co., Jan. T., 1902, No. 138, on verdict for plaintiff in case of Goldie Morford, by her father and next friend, H. O. Morford, v. Sharpsville Borough.    Before BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ.    Reversed.

Trespass to recover damages for the death of a child.    Before GALBREATH, P. J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[You have heard the witnesses say what the trouble was, Mrs. Morford saying that the horse was frightened as she went to tie him to the post and that he began to back and backed across the street and over the embankment.    On the other hand, some of the witnesses for the defense say that she was attempting to hitch the horse to a pole on the eastern side of the street, which is but a little distance back from the face of the highway and a little below it, that the horse refused to stand there and that the trouble began in that way.    Possibly, gentlemen, the view we will take of this case—of the law of the case—it will not be very important how that trouble arose nor what it consisted of.]  [1]

[So that the primary question for you to determine is, Was the borough guilty of negligence?    And in order to determine that question you must first determine whether or not this was a place such as required action on its part to guard it; in other words, was it a dangerous place?]  [2]

[But if in fact the borough has been negligent, then that increased burden is the price of that neglect.    In other words, a borough cannot be negligent in these matters without possibly sooner or later having to pay the penalty.    So that would be one of the natural penalties under the law of negligence, if the neglect existed, and that is wholly a question for the jury.]  [3]

[If you come to the conclusion that there was negligence here and consequently there should be a verdict for the plaintiff, you will consider how her injuries will affect her through after life.]  [4]

╰ [You will take all these things into consideration, first asking yourselves the question, was this a dangerous place, such that reasonably should have been guarded against to prevent such contingencies as happened in this case. If it was such a dangerous place, then it is admitted that there were no guard rails, and you have already arrived at the conclusion that there must have been negligence because it would be the absence of care under the circumstances, if it was a dangerous place. Then having arrived at the point, if you should consider this a dangerous place, your next inquiry should be, what amount of damages has been sustained by the plaintiff, and when you come to determine that question you will be guided by the rules of law I have laid down to you.] [5]

Verdict and judgment for plaintiff for $850. Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*S. H. Miller*, with him *J. A. McLaughrey* and *Frank Klein*, for appellant, cited : Burrell Twp. v. Uncapher, 117 Pa. 353 ; Ewing v. North Versailles Twp., 146 Pa. 309 ; Card v. Columbia Twp., 191 Pa. 254 ; Schaeffer v. Jackson Twp., 150 Pa. 145 ; Potter v. Gas Co., 183 Pa. 575 ; Wilson v. Penna. R. R. Co., 177 Pa. 503.

*Q. A. Gordon*, with him *Fred. A. Service*, for appellee.

OPINION BY MORRISON, J., July 17, 1905 :

This action of trespass based on the alleged negligence of the defendant, is in favor of the real plaintiff, Goldie Morford, who at the time of the accident was only two years old, and, therefore, it is conceded by the learned counsel for the defendant, that the question of contributory negligence on her part is not in the case.

The accident happened in the borough of Sharpsville on a highway called Mercer avenue. This avenue ran in a southerly direction to the cemetery just outside the borough line. Very near to the borough line the avenue is crossed by a ravine running east and west and this was filled so as to make a good

passable highway.  But on each side thereof, there were steep declivities and it is conceded, in the argument of this case, that there was evidence from which the jury could find that it was a dangerous place which ought to have been protected by guard rails, on both sides of the avenue along this fill.

The defendant's theory of the case is that about twenty-two feet from the cemetery gate, northward and on the east side of this filled portion of the avenue, a telephone pole stood down over the embankment from the level of the street about four feet, that is, the pole stood four feet from the edge of the embankment and from this edge to the pole was a descent of about four feet.  The testimony of three witnesses on the part of the defendant tended to show that Mrs. Morford, who had charge of the horse and carriage in which Goldie and herself were driving to the cemetery, alighted from the carriage and attempted to drive the horse over the edge of the embankment, so that she could hitch it to the telephone pole; that the horse's front feet went over the edge of the embankment and the soft earth gave away, letting the horse down upon its knees, and that Mrs. Morford then violently pulled on one of the lines twisting the horse's head around to one side and that he then rolled over the edge of the embankment and dragged the buggy, in which Goldie sat, down the embankment until it lodged against a tree and the child was thrown out and seriously injured.

The plaintiff's theory was that Mrs. Morford was trying to hitch her horse on the west side of the avenue and the horse became frightened and unmanageable and backed over the embankment on the east side.  It thus appears that there is a plain dispute of fact as to how the accident occurred.  The learned counsel for the appellant concedes, in his argument, that the evidence warranted the jury in finding: (1) That the accident occurred and the injury was sustained; (2) That the place where the accident occurred was a dangerous place, and (3) That the borough was negligent in not providing guard rails.  But he vigorously denies that the borough's negligence was, as matter of law, the proximate cause of the accident which resulted in the injury.  He states the question involved concisely as follows: " The failure of the court to submit to the jury the question: Was the injury to plaintiff the result

of an unusual or unforeseen use of the road at the point of accident?"

It is contended by the learned counsel for the plaintiff that this question was not raised in the court below and he argues that it would be unfair, on that ground, to reverse the court. But we think this question was fairly raised by the defendant's second point, viz.: "Roads are made for ordinary travel; if they fulfill such purpose they are sufficient, and those in charge of them are not responsible for extraordinary accidents occurring on them."

If the jury believed the witnesses, whose testimony tended to prove that Mrs. Morford forced the horse over the embankment, then, we think this point fairly raised the question of the proximate cause of the accident.

The first assignment of error is from the judge's charge, as follows: "You have heard the witnesses say what the trouble was, Mrs. Morford's saying that the horse was frightened as she went to tie him to the post and that he began to back and backed across the street and over the embankment. On the other hand, some of the witnesses for the defense say that she was attempting to hitch the horse to a pole on the eastern side of the street, which is but a little distance back from the face of the highway and a little below it, that the horse refused to stand there and that the trouble began in that way. Possibly, gentlemen, the view we will take of this case—of the law of the case—it will not be very important how that trouble arose nor what it consisted of." In this portion of the charge considered in connection with the third, fourth and fifth assignments, we think there is palpable error. These portions of the charge considered in connection with the whole charge, probably lead the jury to believe that they were instructed to find for the plaintiff, if convinced that the accident occurred and the injury was sustained; that the place where the accident occurred was a dangerous place, and that the borough was negligent in not providing guard rails. It is true that the learned court, in answer to plaintiff's points, instructed the jury that the absence of guard rails must be found to be the proximate cause of the accident. But this instruction is so plainly contradicted in the general charge, and in the failure of the court to submit the question of proximate cause to the jury upon

the evidence, and in the failure of the court to instruct the jury as to the law governing the case, if Mrs. Morford forced the horse over the embankment, that the jury may have lost sight of the question of proximate cause entirely.    In our opinion, if the accident happened as contended for by the defendant, the jury should have been instructed that, though the place was dangerous, and the borough authorities were negligent in not maintaining guard rails, yet this negligence was not the proximate cause of the accident and the verdict should be for the defendant.

In Habecker v. Lancaster Township, 9 Pa. Superior Ct. 553, we held as fairly stated in the syllabus : " Where the sole efficient proximate cause was the breaking of harness in consequence of which the control of the horse and wagon was lost, with the result of their falling into a quarry pit near the road, the township will not be held liable for omitting guard rails which might have prevented the accident, and a nonsuit was properly entered."    In that case President Judge RICE thus stated the rule : " The injury must be the natural and probable consequence of the negligence, such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrongdoer, and likely to flow from his act: Hoag v. R. R. Co., 85 Pa. 293 ; Yoders v. Amwell Twp., 172 Pa. 447 ; Bitting v. Maxatawny Twp., 177 Pa. 213." Judge RICE further along in the opinion said : " The township officers were under no more obligation to foresee the breaking of a holdback strap going downhill than the breaking of a trace going uphill, and were under no plainer obligation to provide against the consequences of the accident in the one case than in the other."    Habecker v. Lancaster Twp., 9 Pa. Superior Ct. 553, is quoted with approval by the Supreme Court in Card v. Columbia Twp., 191 Pa. 254.    In that case the Supreme Court said: " The tugs became detached from the whiffletrees and this was the primary cause of the casualty complained of.    As a consequence of it, the wagon pole dropped to the ground, the horses were frightened and ran away, and the driver was unable to guide or control them.    None of these circumstances is chargeable to the negligence of the township. Its negligence lies in its failure to erect a barrier at the place where the wagon went down the slope."

This was said in a case where the township was negligent in failing to maintain a barrier at a dangerous place, and where the horses ran away and went over this place and killed the plaintiff's wife, and the judgment in favor of the plaintiff was reversed because the want of a barrier was not the proximate cause of the accident.

In Potter v. Gas Co., 183 Pa. 575, the Supreme Court affirmed the court below in submitting this question to the jury: "Was this negligence the proximate cause of plaintiff's injury (the broken kneepan), or was it the not reasonably to be foreseen action of a vicious, easily frightened, animal?" That case decides that where the evidence is in dispute or the inferences to be drawn therefrom are doubtful, the question of proximate cause must be submitted to the jury.

In Wilson v. Penna. R. R. Co., 177 Pa. 503, it is said: "When the facts are either admitted, or established by undisputed evidence, it is the duty of the court to declare the law applicable to them; but when material facts are disputed or inferences of fact are to be drawn from the testimony, it is the exclusive province of the jury to determine what they are." (See p. 512.)

In Chartiers Township v. Phillips, 122 Pa. 601, it is held (see p. 611): "The defendant in the fourth point asked the court to charge the jury, that if the accident was caused by the uncontrollable struggle of a choking horse, or from this cause concurring with a defect in the highway, their verdict must be for the defendant. To this the court replied, 'Refused, unless the plaintiff by his negligence contributed to, or was the cause of the uncontrollable struggle of the horse.' The vice of this answer is, that the court confounded the effect of an independent cause of the accident, with the effect of the plaintiff's contributory negligence, and really held that it required a combination of the two in order to relieve the defendant from responsibility for the accident. Now, the contributory negligence of the plaintiff alone and by itself, if it existed was sufficient to discharge the defendant from all liability. So, also, if the accident was produced by an intervening and independent cause for which the defendant was not responsible, that too would relieve the defendant from liability,

and this was the meaning and substance of the point. The point should have been affirmed as it stood."

In Schaeffer v. Jackson Twp., 150 Pa. 145, Mr. Justice HEY-DRICK speaking for the court said (p. 149) : "It is a general rule as well settled as anything in the law of negligence that a man is responsible for such consequences of his fault as are natural and probable, and might, therefore, be seen by ordinary forecast, but if his fault happened to concur with something extraordinary, and therefore not likely to be foreseen, he will not be answerable for the extraordinary result. This rule applies to actions against municipal and quasi-municipal corporations as well as to natural persons and private corporations." There is much more in this opinion which is applicable to the case under consideration.

Tested by the principles above referred to leaves no doubt, in our minds, that the learned court erred in not properly submitting the question of fact as to how the accident occurred and whether the want of guard rails was its proximate cause, to the jury. If Mrs. Morford, who had the infant plaintiff in charge, was making a proper and reasonable effort to hitch her horse on the west side of the avenue, and the horse became frightened and backed across the road and over the embankment on the east side, and this caused the injury to the plaintiff, there might be a recovery. On the other hand, if Mrs. Morford forced the horse over the edge of the embankment, on the east side of the road, for the purpose of hitching it to the telephone pole above referred to, then we are clear that this was the proximate cause of the accident and, it being an extraordinary and unusual thing, the borough authorities could not reasonably be expected to have foreseen it. They were not bound to foresee any such conduct on the part of any person using the highway, and if this was the proximate cause of the accident, the negligence of the borough in not maintaining guard rails will not entitle the plaintiff to recover. If the defendant's witnesses are believed, the horse was not frightened and nothing happened, at the time of the accident, which any reasonable person ought to have anticipated. We sustain all of the assignments of error except the second.

Judgment reversed with a new venire.